# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, National Association, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10-442 |
| STONEBROOK, INC., DYAS CONSTRUCTION MANAGEMENT, LLC, CRAIG F. DYAS FAMILY LIMITED PARTNERSHIP, and CRAIG F. DYAS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MOTION FOR APPOINTMENT OF RECEIVER AND INCORPORATED SUPPORTING MEMORANDUM OF LAW

**COMES NOW** Wells Fargo Bank, National Association, successor-by-merger to Wachovia Bank, N.A., successor-by-merger to SouthTrust Bank ("Wells Fargo" or "Plaintiff"), and pursuant to Rule 66 of the Federal Rules of Civil Procedure, moves the Court for entry of an order substantially in the form of the proposed Order attached hereto as **Exhibit A** (the "Proposed Order"), appointing Warren, Averett, Kimbrough & Marino, LLC, as receiver of the mortgaged property, commonly known as Stonebrook Office Park, and described more particularly herein.  In support of this Motion, Wells Fargo states as follows:

## I. Introduction

1.      Contemporaneously herewith, Wells Fargo has filed with the Court its Verified Complaint (the "Complaint") requesting the appointment of a receiver, injunctive relief, and other equitable and legal relief against defendants Stonebrook, Inc. ("Stonebrook"), Dyas Construction Management, LLC ("Dyas Construction"), Craig F. Dyas Family Limited Partnership ("Dyas Family LP"), and Craig F. Dyas ("Dyas", and together with Stonebrook, Dyas Construction, and Dyas Family, L.P., collectively, the "Defendants").

2.      The Complaint relates to, among other things, that certain real property, fixtures, and personal property more particularly described therein, and more commonly known as Stonebrook Office Park located in Fairhope, Alabama.

3.      Based on the factual allegations set forth herein, Wells Fargo respectfully requests the Court enter an order appointing a receiver with all power and authority requested herein.

## II. Background

### The Loan Documents

4.      On or about May 16, 2006, Wells Fargo made a loan to Stonebrook in the original principal amount of $1,721,251.74 (the "Stonebrook Loan").

5.      The Stonebrook Loan is evidenced by, among other things, that certain Promissory Note dated October 19, 2006, made by Stonebrook payable to

2

Wells Fargo in the original principal amount of $1,721,251.74 (renewing, extending, and/or modifying that certain Promissory Note dated June 15, 2006, in the original principal amount of $1,638,092.77), as modified by that certain Modification Number One to Promissory Note dated May 19, 2008, entered in to by and between Stonebrook, Dyas, and Wells Fargo (collectively, the "Stonebrook Note").  A true and correct copy of the Stonebrook Note is attached to the Complaint as **Exhibit 2** and incorporated herein by reference.

6.     The Stonebrook Loan is secured by, among other things, that certain Commercial Guaranty dated December 18, 2003 executed by Dyas in favor of Wells Fargo, pursuant to which Dyas unconditionally guaranteed all amounts owing from Stonebrook to Wells Fargo (as assumed, amended, and modified from time to time, the "Stonebrook Guaranty Agreement").  A true and correct copy of the Stonebrook Guaranty Agreement is attached to the Complaint as **Exhibit 8** and incorporated herein by reference.

7.     The Stonebrook Note is secured by among other things, that certain Mortgage dated October 17, 2003, executed by Dyas Family L.P. in favor of Wells Fargo, and recorded on October 21, 2003, in the Recording Office at Instrument 766872 (as assumed, amended, and modified from time to time, the "Stonebrook Mortgage III"), pursuant to which Dyas Family L.P. granted Wells Fargo a security interest in the real property, personal property, and fixtures more particularly

3

described therein (collectively, the "Stonebrook Mortgage III Collateral"), including without limitation, the Stonebrook Parking Lot (the "Stonebrook Parking Lot"). A true and correct copy of the Stonebrook Mortgage III is attached to the Complaint as **Exhibit 5** and incorporated herein by reference.

8.      Stonebrook Mortgage III, which among other things secures the Stonebrook Parking Lot, provides in part:

> Upon the occurrence of an Event of Default and at any time thereafter, [Wells Fargo], at [Wells Fargo's] option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

> Appoint Receiver. [Wells Fargo] shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. [Wells Fargo's] right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.

9.      The Stonebrook Loan is also secured by, among other things, that certain Construction Mortgage dated January 17, 2002, executed by Stonebrook in favor of Wells Fargo, and recorded on January 18, 2002, in the Recording Office at Instrument 637936 (as assumed, amended, and modified from time to time, the "Stonebrook Mortgage IV"), pursuant to which Stonebrook granted Wells Fargo a security interest in the real property, personal property, and fixtures more particularly described therein (collectively, the "Stonebrook Mortgage IV

4

Collateral"), including without limitation, the Stonebrook Office Buildings (the "Stonebrook Office Buildings", and together with the Stonebrook Parking Lot, collectively, the "Stonebrook Office Park"). A true and correct copy of the Stonebrook Mortgage IV is attached to the Complaint as **Exhibit 6** and incorporated herein by reference.

10.    Stonebrook Mortgage IV, which among other things secures the Stonebrook Office Buildings, provides in part:

> Upon the occurrence of an Event of Default and at any time thereafter, [Wells Fargo], at [Wells Fargo's] option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:
>
> Appoint Receiver. [Wells Fargo] shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. [Wells Fargo's] right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.

11.    The Stonebrook Loan is also secured by, among other things, that certain Mortgage and Assignment of Rents dated May 16, 2006, executed by Dyas Family, L.P. in favor of Wells Fargo, and recorded on May 25, 2006, in the Recording Office at Instrument No. 977528, which was re-recorded on June 21, 2006, in the Recording Office at Instrument No. 983009 (as assumed, amended, and modified from time to time, collectively, the "Stonebrook Mortgage V", and

together with Stonebrook Mortgage III and Stonebrook Mortgage IV, collectively, the "Stonebrook Receiver Mortgages"), pursuant to which the Dyas Family, L.P. granted Wells Fargo a security interest in the real property, personal property, and fixtures more particularly described therein (collectively, the "Stonebrook Mortgage V Collateral", and together with the Stonebrook Mortgage III Collateral and the Stonebrook Mortgage IV Collateral, collectively, the "Receiver Collateral"), including without limitation, the Stonebrook Parking Lot.  A true and correct copy of the Stonebrook Mortgage V is attached to the Complaint as **Exhibit 7** and incorporated herein by reference.

12.     Stonebrook Mortgage V, which secures the Stonebrook Parking Lot, provides:

> Failure of Mortgagor or any other person liable to timely pay or perform any of the Obligations is a default ("Default") under this Mortgage.  Upon the occurrence of a Default the following remedies are available:

> (iii)  [Wells Fargo] may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rents therefrom as hereinabove provided.  In the event of such application, Mortgagor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Mortgagor, without regard to whether Mortgagor has committed waste or permitted deterioration of the Property, without regarding to the solvency of Mortgagor or any other person, firm, or corporation who or which may be liable for the payment of the Obligations.

B MCOMBS 928567 v4
1039341-000180 08/12/2010

13.    Pursuant to that certain Absolute Assignment of Leases and Rents dated April 24, 2009, executed by Dyas in favor of Wells Fargo, recorded on April 27, 2009, in the Recording Office at Instrument No. 1174152 (the "Assignment of Rents", and together with the Stonebrook Receiver Mortgages, collectively, the "Receiver Agreements"), Dyas absolutely assigned and transferred to Wells Fargo all present and future leases, subleases, licenses, or occupancy agreements of the property more particularly described therein, including without limitation, the Stonebrook Office Park.  A true and correct copy of the Assignment of Rents is attached to the Complaint as **Exhibit 22** and incorporated herein by reference.

14.    The Assignment of Rents provides:

Notwithstanding that this Assignment is effective immediately, so long as there shall exist no default by [Dyas] in the payment and performance of the Obligations or in the performance of any obligation or agreement in any Lease (each, a "Default"), [Dyas] shall have the privilege under a revocable license to collect as they become due, but not prior to accrual, all Rents from the Property and to receive and hold the same. [Dyas] shall receive and hold such Rents in trust as a fund to be applied to the payment of real estate taxes, insurance, maintenance, repair and Lease obligations with respect to the Property and to the payment of interest and principal and other sums becoming due under the Obligations, before retaining and/or disbursing any part of the Rents for any other purpose.

15.    The Assignment of Rents also provides:

Upon any occurrence of default, . . . Bank shall have the right, in its discretion, without notice, by agent or by a receiver appointed by the court, and without regard to the adequacy of security for the Obligations, to (i) enter upon and take possession of the Property, (ii) notify tenants, subtenants and any property manager to pay Rents to

7

the Bank or its designee . . . , (iv) have, hold, manage, lease and operate the Property . . . .

<u>The Defaults</u>

16.    The Stonebrook Loan is in default due to, among other things, Stonebrook's failure to pay the full installments of principal, interest and other payments when due and owing as required under the Loan Documents.

17.    As a result of Stonebrook's failure to pay the amounts due and owing under the Stonebrook Note, Wells Fargo declared the Stonebrook Note to be in default and demanded repayment of all amounts due and owing thereunder, including without limitation, all principal, interest, fees, and attorneys' fees and expenses (collectively, the "Obligations"), pursuant to a Notice of Default and Demand for Payment letter (the "Stonebrook Demand Letter") dated November 5, 2008.  A true and correct copy of the Stonebrook Demand Letter is attached to the Complaint as **Exhibit 17** and incorporated herein by reference.

18.    Pursuant to the Loan Documents (as defined in the Complaint), including without limitation, the Assignment of Rents, upon the default of Stonebrook and Dyas under the Loan Documents, Wells Fargo revoked Defendants' license to collect and retain the Rents (as defined in the Assignment of Rents).

19.    As of the date hereof, however, Stonebrook and Dyas have failed and refused to satisfy the Obligations.

B MCOMBS 928567 v4
1039341-000180 08/12/2010

20.     Wells Fargo is entitled to collect the Rents and apply the same in accordance with the Loan Documents.

21.     Wells Fargo has made demands for Defendants to turn over the Rents and cease collecting Rents.

22.     Defendants have continued to collect the Rents, including without limitation, that certain lease termination payment in the amount of $11,250.00 paid by a former tenant of the Stonebrook Office Park, Klumb Lumber Company, to Dyas on or about January 2010 (collectively, the "Converted Rents").

23.     Wells Fargo made demand upon Dyas to surrender the Converted Rents by that certain Notice of Default and Demand for Payment letter dated March 10, 2010 (the "Rents Demand Letter"). A true and correct copy of the Rents Demand Letter is attached hereto as **Exhibit B**.

24.     Dyas failed to comply with the Rents Demand Letter and surrender the Converted Rents.

25.     Wells Fargo reasonably believes that Defendants may have converted other Rents and that Wells Fargo's interest in the Rents is endangered.

26.     In addition, Defendants have failed to pay when due all taxes levied against the Stonebrook Office Park as it is required to do under the Loan Documents, including without limitation, when the Stonebrook Office Park was

sold at a tax sale for Dyas' and Dyas Family, L.P.'s failure to pay the 2009 real estate taxes when due and owing.

27.     Defendants have also breached their duty under the Loan Documents to maintain the Stonebrook Office Park by failing to perform all repairs, replacements, and maintenance necessary to preserve its value, including without limitation, failure to timely repair the air conditioning unit for another former tenant of the Stonebrook Office Park, Boan Contracting Co., Inc. ("Boan"), as well failure to timely repair an office elevator that resulted in Boan ending its tenancy at the Stonebrook Office Complex.

28.     In summary, Defendants have failed to satisfy its Obligations under the Loan Documents and have refused to protect and preserve Wells Fargo's Receiver Collateral, leaving Wells Fargo no choice but to ask that a receiver be appointed for the management of the Stonebrook Office Park.

### III. Argument for Appointment of a Receiver

29.     Wells Fargo seeks appointment of a receiver to take control of the Receiver Collateral, including without limitation, the Stonebrook Office Park, and to protect the interests of Wells Fargo in and to the Receiver Collateral.

30.     A receiver is a "neutral court officer appointed by the court to take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of undertaking any . .  appropriate

action." *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998) (quoting Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure, § 2981, at 5 (1973)).

31.    A federal district court has the power in equity to appoint a receiver. Fed. R. Civ. P. 66; *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289 (11th Cir. 1998).  Furthermore, the appointment of a receiver is committed to the sound discretion of the district court.  *See Santibanez v. Wier McMagon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993).  The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principals.  *Nat'l P'ship Inv. Corp.*, 153 F.3d at 1291-92.

32.    Pursuant to Rule 66, anyone demonstrating an interest in the property or a relationship to the owner or party in control of the property may seek the appointment of a receiver.  *Santibanez*, 105 F.3d at 241.

33.    "Creditors with a security interest in real property have a well-established interest in the property sufficient to support the appointment of a receiver."  *Brill & Harrington Investments v. Vernon Sav. & Loan Ass'n*, 787 F.Supp. 250, 253 (D.D.C. 1992) (citing 12 C.Wright & A. Miller, Federal Practice and Procedure § 2983 (1973)); *Williams v. Southern Cotton Oil Co.*, 45 F.2d 387,

388 (5th Cir. 1930); *see also View Crest Garden Apartments v. United States*, 281 f.2d 844 (9th Cir. 1960).

34.     Wells Fargo is entitled to a receiver on two separate and independent grounds.

A.     Wells Fargo is Contractually Entitled to the Appointment of a Receiver

35.     Wells Fargo has a contractual right under the Receiver Agreements to the appointment of a receiver for the Receiver Collateral, including without limitation, the Stonebrook Office Park.

36.     Events of Default have occurred and are continuing under the Loan Documents, including without limitation, the Receiver Agreements.

37.     Even though Wells Fargo is not required to give notice of any Default before having a receiver appointed, Defendants received notice of the events of default as a result of the Notice of Default sent by Wells Fargo dated November 5, 2008, as well as the Rents Demand Letter, and various other communications between Wells Fargo and Defendants.

38.     Federal courts have recognized that the appointment of a receiver is appropriate where parties have contractually agreed to a receivership.  *See, e.g. Britton v. Green*, 325 F.2d 377, 382 (10th Cir. 1963); *Garden Homes, Inv. v. U.S.*, 207 F.2d 459, 460 (1st Cir. 1953).  *See also Citibank N.A. v. Nyland, Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (holding that it is entirely appropriate for a mortgage holder

to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagor has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default); *Pioneer Capital Corp. v. Environamics Corp.*, 2003 WL 345349, *9 (D. Me. 2003) (concluding that "the existence of an express contractual right to appointment of a receiver, coupled with 'adequate *prima facie* evidence of a default,' can be sufficient to warrant such an appointment").

39.    In this case the parties contractually agreed to the appointment of a receiver as set forth in the Receiver Agreements. Pursuant to the Receiver Agreements, Defendants irrevocably consented to the appointment of a receiver. As a result, the Court should grant Wells Fargo's motion to appoint a receiver.

B.    <u>Wells Fargo is Entitled to the Appointment of a Receiver Pursuant to the Court's Legal and Equitable Powers</u>

40.    In addition to being contractually entitled to the appointment of a receiver, Wells Fargo is entitled to the appointment of a receiver for the Receiver Collateral, including without limitation, the Stonebrook Office Park, pursuant to the Court's legal and equitable powers.

41.    Courts consider the following factors to determine the need for a receivership: (1) the existence of a valid claim by the party seeking the appointment; (2) fraudulent conduct by the defendant; (3) imminent danger that property will be concealed, lost, or diminished in value; (4) inadequacy of other

available legal remedies; (5) the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (6) plaintiff's probable success in the action; and (7) the possibility of irreparable injury to the plaintiff's interest in the property. *See Consolidated Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326-27 (1st Cir. 1988); *Santibanez*, 105 F.3d at 241-42; *Waag v. Hamm*, 10 F.Supp.2d 1191, 11931 (D. Colo. 1998).

42.     Wells Fargo has valid claims against each of the Defendants for amounts due and owing under the Loan Documents.

43.     There is imminent danger that the Rents may be lost, squandered, concealed, injured, or decline in value and that the Stonebrook Office Park will incur waste and diminution of value. Defendants have, among other things, failed to properly remit Rents to Wells Fargo, have failed to pay taxes when due and owing on the Stonebrook Office park, and have allowed the Stonebrook Office Park to fall into disrepair, resulting in the loss of tenants in the Stonebrook Office Park that can pay rent to Wells Fargo.

44.     Due to the inability of Defendants to pay their obligations when they have come due and due to the Converted Rents, the appointment of a receiver is the only adequate remedy available to Wells Fargo.

45.     Wells Fargo's success in this matter is certain.  Defendants possess no cognizable defenses to Wells Fargo's contractual claims.

B MCOMBS 928567 v4
1039341-000180 08/12/2010

46.     Even if any conceivable harm were posed to Defendants, it is outweighed by the likely harm to Wells Fargo in the form of the continued deterioration of the Receiver Collateral, conversion of additional Rents, and the loss of additional tenants resulting from Defendants' continuing failures to maintain and preserve the Receiver Collateral, resulting in reduced rents available to pay down on the Obligations.

47.     Wells Fargo is willing to post a bond in an amount the Court deems appropriate for the appointment of the receiver.  However, due to undisputable evidence of the Defendants' perilous financial condition and the imminent risk of waste and diminution in value, Wells Fargo believes that a bond is unnecessary.

C.     <u>Identity, Qualifications, and Powers of the Receiver</u>

48.     Wells Fargo respectfully requests that the Court appoint the firm of Warren, Averett, Kimbrough & Marino, LLC ("Warren Averett"), with Jesse D. Slaton ("Mr. Slaton") as the primary contact, as receiver of the Property, and all improvements, fixtures, and personal property thereto.

49.     Wells Fargo submits the declaration of Mr. Slaton, attached hereto as **Exhibit C**, further describing Warren Averett's ability and willingness to serve as the receiver in this action ("Slaton Declaration").

50.     Wells Fargo requests that the Receiver, at Defendants' expense, have all of the usual powers and duties of receivers in similar cases, including, without

limitation, the full power to hold, develop, rent, lease, manage, maintain, operate, market, sell and otherwise use or permit the use of the Receiver Collateral, including without limitation, the Stonebrook Office Park, subject to Wells Fargo's approval, including without limitation (collectively, the "Receiver's Powers"):

(a) enter upon and take possession and control of any and all of the Receiver Collateral, including without limitation, the Stonebrook Office Park;

(b) take and maintain possession of all documents, books, records, papers and accounts relating to the Receiver Collateral, including without limitation, the Stonebrook Office Park;

(c) exclude Defendants and their agents, servants and employees wholly from the Receiver Collateral, including without limitation, the Stonebrook Office Park;

(d) manage and operate the Receiver Collateral, including without limitation, the Stonebrook Office Park;

(e) preserve and maintain the Receiver Collateral, including without limitation, the Stonebrook Office Park;

(f) make repairs and alterations to the Receiver Collateral, including without limitation, the Stonebrook Office Park;

(g) complete any construction or repair of the Receiver Collateral, including without limitation, the Stonebrook Office Park, with such changes, additions or modifications of the plans and specifications or intended disposition and use of the Collateral as Wells Fargo may in its sole discretion deem appropriate or desirable to place the Property in such condition as will, in Wells Fargo's sole discretion, make it or any part thereof readily marketable or rentable;

(h) conduct a marketing or leasing program with respect to the Receiver Collateral, including without limitation, the Stonebrook Office Park, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the Receiver Collateral under such

terms and conditions as Wells Fargo may in its sole discretion deem appropriate or desirable;

(i) employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Wells Fargo may in its sole discretion deem appropriate or desirable to implement and effectuate the rights and powers granted therein;

(j) execute and deliver, as attorney-in-fact and agent of Defendants or in Defendants' own names, such documents and instruments as are necessary or appropriate to consummate authorized transactions;

(k) enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Wells Fargo may in its sole discretion deem appropriate or desirable;

(l) collect and receive the Rents from the Receiver Collateral, including without limitation, the Stonebrook Office Park;

(m) eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

(n) sue for unpaid Rents, payments, income or proceeds in the name of Defendants or Wells Fargo;

(o) maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for Rents;

(p) compromise or give acquittance for Rents, payments, income or proceeds that may become due;

(q) require any and all officers, directors, managers, agents, representatives, independent contractors, partners, affiliates, attorneys, accountants, shareholders and employees of Defendants to return any and all Rents in their possession;

(r) analyze and determine the best approach to maximize value from the Receiver Collateral, including without limitation, the Stonebrook Office Park, for the benefit of Defendants' creditors and interest holders, including without limitation, marketing and selling the Receiver Collateral as a going concern, subject to Wells Fargo's prior

17

written approval, provided, however, that in no event shall Receiver's power to sell the property, or any other power requested hereunder, in anyway impair Wells Fargo's ability to exercise its rights and remedies under the Loan Documents, including, without limitation, the right to foreclose upon any of the Stonebrook Mortgages (as defined in the Complaint);

(s) do any acts which Wells Fargo in its sole discretion deems appropriate or desirable to protect the security hereof and use such measures, legal or equitable, as Wells Fargo in its sole discretion deem appropriate or desirable to implement and effectuate the provisions of the Stonebrook Mortgages (as defined in the Complaint).

51.    Wells Fargo requests that the receiver be further authorized to apply the revenues collected by such receiver in connection with the management and operation of the Receiver Collateral, including without limitation, the Stonebrook Office Park, *first* to the receiver's compensation as discussed below; *second* to the other costs and expenses of the receivership, including any management fees, attorneys' fees, and other out-of-pocket expenses incurred by the receiver in connection with the receivership; *third* to the costs of operating, maintaining, and repairing the Receiver Collateral (including but not limited to customary salaries and expenses of non-site employees of the receiver, but excluding all salaries and expenses of all employees, agents and affiliates of the receiver whose duties are not limited to operation or management of the Receiver Collateral); *fourth* to repay all sums advanced to the receiver by Wells Fargo; *fifth* to payment of expenses of the Receiver Collateral, including but not limited to payment of real and personal

18

property taxes, insurance, water and sanitation bills and operation expenses; *sixth* whenever sufficient funds are available for such purpose, the Receiver shall make principal and interest payments toward any loans which are secured by a lien on the property; if such loans were authorized under the terms and conditions of the Stonebrook Note and Stonebrook Mortgages (as defined in the Complaint), in order of their first priority, including but not limited to the Stonebrook Note and Stonebrook Mortgages held by Wells Fargo in this action; and *seventh* to a fund to be held by the receiver in an interest-bearing account pending further order of this Court.

52.     Wells Fargo reserves the right to make future requests that the Court expand the Receiver's Powers should the same be deemed necessary.

53.     Wells Fargo requests that receipts received from the operation of the Receiver Collateral be applied to reimburse the Receiver for all reasonable costs and expenses that it (or its delegates) incur as a result of serving as receiver, for payment of insurance premiums and management fees authorized thereunder, to compensate Receiver for its services as receiver, and for payment of all Obligations.

54.     Wells Fargo requests that this Court enter its order providing that Receiver shall be paid a fee equal to $270.00 per hour for time spent by Mr. Slaton directing management and leasing activities and reporting on the Receiver

Collateral, plus reimbursement for out-of-pocket costs and reasonable travel expenses incurred by Mr. Slaton in connection with his duties as receiver (the "Receiver Fee").

55.    Wells Fargo requests that the Court enter its order setting forth the process for paying the Receiver Fee to the Receiver from the operations of the Receiver Collateral.  Each month the Receiver shall provide the parties with an invoice detailing the calculation of the Receiver Fee for that month.  Objections to any invoice shall (a) be in writing; (b) be sent to the Receiver within five (5) business days of the date of the invoice; and (c) describe, in detail, the factual basis for each specific entry subject to such objection.  If the Receiver receives a timely objection, the Receiver shall endeavor to resolve any such dispute prior to payment of the next monthly Receiver Fee payment.  If a timely objection is not resolved prior to the next Receiver Fee payment, either party of the Receiver may file a motion and present the matter to this Court for resolution.

**WHEREFORE,** Wells Fargo requests that the Court enter an Order, substantially similar to the Proposed Order attached hereto, providing for the immediate appointment of Warren Averett to serve as Receiver to take possession of the Receiver Collateral, including without limitation, the Stonebrook Office Park, to preserve, maintain and protect the Receiver Collateral and to take such other action as the Court deems appropriate in these circumstances.

B MCOMBS 928567 v4
1039341-000180 08/12/2010

/s/ W. Patton Hahn
W. PATTON HAHN (HAHNW5894)
MARIANNE H. COMBS (COMBM1875)
Attorneys for Wells Fargo Bank, N.A.


OF COUNSEL:
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
420 20th Street North
1600 Wachovia Tower
Birmingham, Alabama 35203
Telephone (205) 328-0480
Facsimile (205) 322-8007

21

## <u>Certificate of Service</u>

I hereby certify that on August 12, 2010, a copy of the foregoing has been served on the following by Federal Express and United States Mail, First-Class postage prepaid.

Craig F. Dyas Family Limited Partnership
23210 US Highway 98
Fairhope, Alabama 36532-3397

Stonebrook Inc.
23210 US Highway 98
Fairhope, Alabama 36532-3397

Craig F. Dyas
23210 US Highway 98
Fairhope, Alabama 36532-3397

Dyas Construction, LLC
23210 US Highway 98
Fairhope, Alabama 36532-3397

*/s/ W. Patton Hahn*
OF COUNSEL

B MCOMBS 928567 v4
1039341-000180 08/12/2010